IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ERIC WINSTON MILLER,<br>Defendant. | Case No. 15-cr-00471-CRB-1<br><br>**ORDER DENYING AMENDED MOTION TO MODIFY SENTENCE** |

Defendant Eric Winston Miller moves the Court to modify his sentence to time served, pursuant to 18 U.S.C. § 3582(c). See Mot. (dkt. 52). He argues that he has chronic Hepatitis-C, which puts him at increased risk of serious harm should he contract COVID-19, and for which he has received minimal treatment, as well as chronic neck and back pain, for which he has received minimal treatment. See id. at 4–10. The government opposes Mr. Miller's motion, arguing that he has not presented extraordinary and compelling reasons for his release, he presents a safety risk to the public, and the remaining factors under 18 U.S.C. § 3553(a) do not favor his release. See Opp'n (dkt. 53). The Court agrees with the government, determining that Mr. Miller has not satisfied the requirements of the statute; accordingly, the motion is denied.

I.  **BACKGROUND**

Mr. Miller pled guilty in February 2016 to Attempted Manufacture of Hashish Oil, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D), and 21 U.S.C. § 846; Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(B)(1); and Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d). Opp'n at 2. The instant offense took place in September 2015 during a probation search. Id. (citing PSR ¶¶ 13–15). This Court found that Mr. Miller is a career offender, with a guidelines range of 262–327

months, but granted him a variance to 120 months. Id. (citing Ex. A to Amended Motion to Modify Sentence, Sentencing Transcript at 2:22–25 and 3:1–6). He is currently serving his sentence at the United States Penitentiary at Atwater (Calif.), with an anticipated release date of October 4, 2024 (a date moved back from September 7, 2024 because he lost good conduct time for assaulting another inmate in May 2021). Id. at 1 (citing Ex. A, Inmate Discipline Data at 1).

Mr. Miller's history includes two juvenile wardships, nine misdemeanor convictions, and five felony convictions. See PSR (dkt. 29) ¶¶ 36–53; 58–60. In 2010, he was convicted of Assault with a Deadly Weapon when he stabbed someone in the stomach while on felony probation. Id. ¶ 52. He violated probation on that crime in 2011. Id. He was then convicted of Assault with a Deadly Weapon again in 2012 for an altercation in which he attacked someone with a hammer. Id. ¶ 53. He was under supervision by the Napa County Probation Department when the instant offense occurred. Id. He has at least fifteen probation or parole violations. See Opp'n at 3. While in prison for the instant offense, he has a disciplinary record of six sanctioned violations, spanning from 2017 and 2021, several of which involve drug use and the most recent of which involved assault on another inmate. See Opp'n Ex. A.

## II. LEGAL STANDARD

The First Step Act permits a defendant to move for relief under § 3582(c)(1)(A) if the defendant satisfies the statute's exhaustion requirements. See First Step Act § 603(b)(1). The defendant may bring a motion only once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).[1]

The First Step Act did not alter the original framework's requirements that a court consider the factors set forth in 18 U.S.C. § 3553(a) before granting a motion for a reduced sentence, see 18 U.S.C. § 3582(c)(1)(A), and that any sentence reduction under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A).

---

[1] There is no dispute that Mr. Miller has exhausted his claims. See Mot. at 1 (warden denied Mr. Miller's request for compassionate release in January 2021); Opp'n at 4 (conceding exhaustion).

2

Before the First Step Act enabled defendants to bring their own motions for compassionate release under § 3582(c)(1)(A), the Sentencing Commission promulgated a policy statement enumerating circumstances constituting "extraordinary and compelling reasons" to reduce a sentence, U.S.S.G. § 1B1.13 cmt n.1, and directing that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2).

The policy statement refers to motions brought by the Director of the Bureau of Prisons, and not to motions brought by defendants, as defendants could not bring such motions when the policy statement was last amended. See U.S.S.G. § 1B1.13. Because the policy statement does not refer to motions brought by defendants, it is not binding on district courts considering such motions. See United States v. Aruda, 993 F.3d 797, 802 (9th Cir. 2021). However, the policy statement "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." Id. In exercising its discretion, this Court looks to the policy statement for helpful guidance. The Court presently agrees with the policy statement's definition of "extraordinary and compelling reasons" and the policy statement's guidance that people who present a danger to the community should not be granted compassionate release.

First, the Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence all relate to a defendant's individual characteristics or conditions—that is, some combination of the defendant's health, age, and family situation. See U.S.S.G. § 1B1.13 cmt n.1. For example, if the defendant suffers from "a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," the "extraordinary and compelling reasons" standard is satisfied. See U.S.S.G. § 1B1.13 cmt. n.1(A)(i)(i)–(ii). The standard is also satisfied if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75% of his or her term of imprisonment, whichever is less," U.S.S.G. § 1B1.13 cmt. n.1(B), or in certain circumstances requiring the defendant to care for minor children or a spouse or registered partner, id. § 1B1.13 cmt. n.1(C).

Finally, the standard is satisfied if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with," the above-described circumstances. U.S.S.G. § 1B1.13 cmt. n.1(D).

The Sentencing Commission's enumerated circumstances constituting "extraordinary and compelling reasons" to reduce a sentence are sensible. Although a future motion could conceivably persuade the Court that these circumstances fail to capture the full range of "extraordinary and compelling reasons" to reduce a sentence under § 3582(c)(1)(A), the Court has yet to encounter such a motion.

Second, as discussed above, the Sentencing Commission has directed that a court may reduce a sentence under § 3582(c)(1)(A) only if the court finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g), in turn, requires courts to "take into account" four factors when determining the defendant's dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

This framework is also sensible. The Court would not exercise its discretion under § 3582(c)(1)(A) to grant relief to a defendant that the Court determines is a danger to the community. Thus, the Court sees no reason to deviate from the policy statement's dangerousness requirement, which ensures that the Court carefully weighs the public's interest in safety before reducing a defendant's sentence. Even if the Court did not consider Mr. Miller's dangerousness based on U.S.S.G. § 1B1.13, however, it would still do so as part of its consideration of the 18 U.S.C. § 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A) ("after considering the factors set forth in section 3553(a) to the extent that they are applicable"); 18 U.S.C. § 3553(a)(2)(C) ("need for the sentence imposed . . . to protect the public from further crimes of the defendant").

### III. DISCUSSION

The Court denies Mr. Miller's motion because he has not demonstrated that extraordinary and compelling reasons justify his release, he presents a danger to the community, and the Section

3553(a) factors do not support his release.

### A. Extraordinary and Compelling Reasons

Mr. Miller argues that there are two extraordinary and compelling reasons for his release: (1) his chronic Hepatitis-C, which he asserts puts him at greater risk should he contract COVID-19, see Mot. at 4–7; and (2) his chronic Hepatitis-C and chronic neck and back pain, for which he asserts he is not receiving adequate treatment, see id. at 4, 8.

#### 1. Hepatitis-C and COVID Risk

Hepatitis-C may result in liver damage, see Mot. at 5–7 (providing generic information about Hepatitis-C), which may make it more likely that someone suffering from Hepatitis-C would suffer serious illness should he or she contract COVID-19, see CDC, "People With Certain Medical Conditions," available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 28, 2021) (not specifically discussing Hepatitis-C but including liver disease as a condition that "can make [one] more likely to get severely ill from COVID-19"); see also United States v. Stephenson, 461 F. Supp.3d 864, 872 (S.D. Iowa May 21, 2020) (finding extraordinary and compelling reason for release where defendant had Hepatitis-C as well as "a weakened immune system and a damaged liver" during COVID pandemic). But Mr. Miller has had Hepatitis-C since at least 2006, see PSR ¶ 75; Mot. Ex. B at 2 (diagnosed in 1989), and points to no change in his condition or evidence of liver damage.

Even assuming that Mr. Miller's Hepatitis-C would put him at greater risk if he contracted COVID, on January 27, 2021, he was offered the Pfizer-BioNTech vaccine to protect him against contracting COVID-19, and he declined it. See Opp'n Ex. B. The Pfizer-BioNTech vaccine is highly effective against the COVID-19 virus. See FDA Decision Memorandum, available at https://www.fda.gov/media/144416/download at 9 (reporting 95.0% efficacy). Mr. Miller was free to decline the vaccine for any reason or no reason at all. But, in declining it, he chose not to exercise "self-care within the environment of a correctional facility" and made it more difficult for the prison to keep him safe. See U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Accordingly, Mr. Miller's Hepatitis-C combined with the threat of contracting COVID-19 does not amount to an

5

extraordinary and compelling reason for this Court to release him. See United States v. Sawyers, No. 15-70-RSWL-1, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); United States v. Csiki, No. 19-20256, 2021 WL 1884702, at *2 (E.D. Mich. May 11, 2021) (explaining, where "Defendant was given the opportunity to receive a safe, effective, and reliable vaccine, and he refused" that the defendant did not meet the extraordinary and compelling test, as he "intentionally prevent[ed] prison officials from mitigating dangers to his health and safety"); United States v. Lohmeier, No. 12-CR-1005, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); United States v. Williams, No. cr-17-1279-001-PHX-DLR, 2021 WL 321904, at *3 (D. Ariz. Feb. 1, 2021) (noting, where defendant refused COVID vaccine, that defendant's "explanation for refusal, that he did not trust the [FDA]'s emergency use authorization process" was "incredible in light of his claim that his risk of a serious illness from the COVID-19 virus is an extraordinary and compelling reason for his immediate release."); United States v. Gonzalez Zambrano, No. 18-cr-2002-CJW-MAR, 2021 WL 248592, at *5 (N.D. Iowa Jan. 25, 2021) ("Although she requests that the Court take immediate action to reduce her sentence and release her due to the threat of COVID-19, she herself was not willing to inoculate herself against that same disease.").

### 2. Chronic Hepatitis-C and Neck and Back Pain

Nor do Mr. Miller's chronic Hepatitis-C and chronic neck and back pain justify his release independent of the COVID-19 pandemic. Chronic but manageable medical conditions alone do not constitute extraordinary and compelling circumstances. See United States v. Arceo, No. 09-CR-616-EJD-1, 2020 WL 2614873, at *2 (N.D. Cal. May 22, 2020); see also United States v. Ayon-Nunez, No. 1:16-CR-130-DAD, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Mr. Miller suggests that he is receiving inadequate medical care for his conditions. See Mot. at 4, 8. But, assuming that is correct, section 3582(c)(1)(A) does not make all prisoners receiving inadequate medical care eligible for compassionate release. The relevant question is whether Mr.

Miller is "suffering from a serious . . . medical condition . . . that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(ii). That language refers to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate.

The boundaries of this language may seem harsh, but they are sensible given the broader legal context. Mr. Miller has alternative avenues to obtain improved medical care. Prisoners routinely bring constitutional claims based on inadequate medical care. See Western Radio Servs. Co. v. U.S. Forest Service, 578 F.3d 1116, 1119 (9th Cir. 2009) (explaining that in Carlson v. Green, the Supreme Court "allowed a prisoner's action against prison officials for failure to provide proper medical attention in violation of the Eighth Amendment's prohibition against cruel and unusual punishment") (citing 446 U.S. 14, 20 (1980)). The ordinary remedy for ongoing, constitutionally inadequate care is an order that does "not allow [such] constitutional violations to continue," even if that order involves an "intrusion into the realm of prison administration." Brown v. Plata, 563 U.S. 493, 511 (2011). Mr. Miller's argument that inadequate medical care makes him eligible for compassionate release under § 3582(c)(1)(A), see Mot. at 4–8, suggests that Congress intended that statute to serve as an end-run around this established framework. Not so. Mr. Miller's chronic but treatable conditions fail to constitute extraordinary and compelling reasons for his release.

### B. Danger

The Court also does not grant Mr. Miller's motion because it considers him "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." See U.S.S.G. § 1B1.13(2); see also 18 U.S.C. § 3553(a)(2)(C) ("need for the sentence imposed . . . to protect the public from further crimes of the defendant"). The nature and circumstances of Mr. Miller's present conviction include possession—while on probation—of a short-barrel AR-7 rifle with a silencer attached, a second silencer, ammunition and a high capacity magazine, and items to manufacture hashish oil. See PSR ¶¶ 13–15. The weight of the evidence against Mr. Miller is undisputed, as he pled guilty. See Plea Agreement (dkt. 27). Mr. Miller's

7

history and characteristics include a lengthy criminal history, which involves dangerous weapons, see PSR ¶ 40 (switch blade), id. ¶ 46 (brass knuckles and six-inch double-sided dagger), and violent attacks in 2010 and 2012, see id. ¶¶ 52 (stabbing), 53 (hammer attack to the head), about fifteen probation or parole violations, see Opp'n at 11, and repeated violations while in custody, including one just over a month ago for assault, see Opp'n Ex. A. Mr. Miller also has a considerable, lifelong drug addiction. See PSR ¶ 79 ("The defendant began using methamphetamine when he was ten years old, and last used the day of his arrest for the instant offense. He used this substance daily and considers it his drug of choice."). This drug addiction, which appears unchecked, see Opp'n Ex. A at 2 (violation in custody February 2020 for possessing drugs); id. (violation in custody October 2019 for confused state and slurring words); id. at 3 (violation in custody June 2017 for testing positive for meth/amphetamine), creates a serious risk that he will continue to violate the law, see PSR ¶ 79 ("He acknowledged, 'If I wasn't high, I wouldn't have had that gun, every bad decision and every crime I've done, was because of alcohol and drugs.'"). Finally, the nature and seriousness of the danger that Mr. Miller poses to the public is an increase of criminality, firearms and drugs—a substantial danger. See United States v. Daychild, 357 F.3d 1082, 1100 (9th Cir. 2004) ("danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute."). These factors do not favor release.

**C. 3553(a)**

The Court has also considered the applicable sentencing factors from 18 U.S.C. § 3553(a) and finds that they are inconsistent with granting Mr. Miller's motion. As discussed above, Mr. Miller's history and characteristics do not favor release. See 18 U.S.C. § 3553(a)(1). This Court found that Mr. Miller is a career offender, with a guidelines range of 262–327 months, but granted him a variance to 120 months. Id. (citing Ex. A to Amended Motion to Modify Sentence, Sentencing Transcript at 2:22–25 and 3:1–6). He is not scheduled to be released until October of 2024. See bop.gov/find_inmate/byna,e.jsp#inmate_results (last visited June 29, 2021). Releasing him now would not reflect the seriousness of his offense, sufficiently protect the public, or provide adequate deterrence. See 18 U.S.C. § 3553(a)(2).

## IV. CONCLUSION

For the foregoing reasons, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: July 1, 2021



CHARLES R. BREYER
United States District Judge